# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1706-21

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.J.,

     Defendant-Appellant,

and

G.M.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF I.I.H.J.M.,
a minor.

_____

Submitted January 17, 2024 – Decided  January 29, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0117-21.

Joseph E. Krakora, Public Defender, attorney for appellant (James Daniel O'Kelly, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Julie Beth Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

At six months old, I.I.H.J.M (Ivan), born in June 2019, was removed from the home of his biological parents, S.J. (Sarah), and G.M. (Greg),[1] and placed in the custody of the Division of Child Protection and Permanency. The precipitating series of referrals that led to Ivan's removal are not at issue in this appeal. Suffice it to say, the Division filed a guardianship complaint after its efforts to reunify Ivan with his parents failed. During the Division's

---

[1] Consistent with the parties' briefs, we use initials and pseudonyms to protect the confidentiality of these proceedings. R. 1:38-3(d)(12).

A-1706-21

involvement with the family, Ivan endured several placements, including relatives and a non-relative resource parent, M.H. (Melissa).

Following the two-day guardianship trial, the Family Part judge issued a judgment terminating the parental rights of Sarah and Greg to Ivan. In support of the judgment, the trial judge issued a comprehensive oral decision, finding the Division satisfied all four prongs of the best interests test under N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence. Accordingly, Ivan was freed for adoption by his then-current resource parent, J.S. (Jamie) – a cousin of Ivan's half-brother's father.

A few months after the January 20, 2022 guardianship judgment was entered, while the parents' appeals were pending, Jamie requested Ivan's removal for a second time. Jamie previously requested Ivan's removal within a few days of his initial placement in December 2019. Immediately thereafter Ivan was placed with Melissa until August 2020.

Following Jamie's most recent request for Ivan's removal, the Division again returned the child to Melissa's resource home where he currently resides. Both parents moved for a remand to file a motion to vacate the judgment under Rule 4:50-1. The Division and law guardian opposed the motion but consented to a limited remand to reopen the second part of the third prong, whether the

A-1706-21

Division satisfied its burden to explore alternatives to termination, and the fourth prong, whether termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(3) and (4). In our order granting the remand motion, we permitted the parties to present evidence to the trial court regarding Ivan's status and custody and the parents to file a Rule 4:50-1 motion.

In view of the trial judge's retirement, the matter was assigned to Judge Margaret M. Marley, who denied the parents' ensuing Rule 4:50-1 motion to vacate the judgment but conducted a multi-day testimonial hearing regarding Ivan's custody and status. Sarah asserted that if Ivan could not be returned to her, she proposed placement with E.D. (Edith), the child's paternal aunt, who resides in Colorado. For the first time at the hearing, Sarah proposed additional family members for consideration. During the hearing, the judge accepted the identified surrender of Greg's parental rights to Ivan provided Melissa adopts the child.[2]

The Division presented the testimony of Frank Dyer, Ph.D., who conducted a bonding evaluation between Ivan and Melissa; a caseworker, who noted concerns about Edith because she lives far from Ivan's relatives and had a

---

[2] On Greg's application, we dismissed his appeal. Accordingly, he no longer is a party to these proceedings.

history of failing to communicate with the Division; and Melissa, who confirmed she understood the difference between adoption and kinship legal guardianship (KLG) and wished to adopt Ivan. The law guardian did not present any evidence but remained aligned with the Division's plan for adoption by Melissa. Sarah presented the testimony of Edith and testified on her own behalf. The Division presented another caseworker to rebut Sarah's testimony that the Division failed to explore her siblings and other relatives as potential caregivers.

On January 13, 2023, Judge Marley issued a well-reasoned oral decision, spanning more than fifty transcript pages. At the outset, the judge carefully canvassed the evidence presented at the initial trial, finding no reason to disturb the trial court's decision on the first and second prongs of the best interests test. Similarly, the judge meticulously chronicled the testimony adduced at the remand hearing and the supporting documentary evidence presented. The judge thoroughly explained her factual and credibility findings, crediting the testimony of the Division's witnesses and concluding the testimony of Sarah and Edith lacked credibility.

The judge considered Edith initially had been ruled out because she failed to comply with the process for interstate placement, resided in Colorado and had never met Ivan in person, and was recently approved as a caretaker by that state

A-1706-21

despite the Division's concerns.  Conversely, the judge noted Ivan lived with Melissa for sixteen and one-half months.  Moreover, after the child was removed from her home, Melissa agreed to assist Jamie by taking Ivan "for weekends twice a month, from Friday afternoon to Sunday afternoon."  The judge thus concluded:  "So in reality, [Melissa] has been in the child['s] . . . life in some capacity as a caregiver for seemingly thirty-two and a half months of his forty-two-month lifetime."

Citing Dr. Dyer's bonding evaluation, the judge noted Ivan appeared "happy, relaxed, and secure" with Melissa.  The judge was persuaded by Dr. Dyer's findings that Ivan was "in a in a critical stage of personality formation"; "ha[d] a very significant emotional tie to [Melissa]"; would continue to thrive in her home; and if placed with a stranger would be "at risk for severe personality disorder and emotional problems entering adolescence and adulthood given his previous history of disruptions."

Turning to the fourth prong, Judge Marley expressed the court's concern

> that well-intentioned and appropriate efforts to place this child in the home of kin has resulted in adults returning this child to the Division as a result of their ill-prepared and poorly thought-out approach to accepting the responsibility of custody of a child.
>
> The end result is that the quest for kin has instead left our child in the foster care system indefinitely with

6

current proposals that he be left there for an even longer time.

The goal of serving and upholding the child's best interest and well-being have been derailed in this quest.

This court has been presented with no expert opinion to suggest that the [termination of parental rights] will now do more harm than good than it would have done at the time of the [trial] court's rendering the termination of parental rights decision.

The only opinion offered to this court has been a positive opinion about the bond between [Ivan] and the current resource parent.

A resource parent who has gone out of her way to offer herself to this child in every imaginable way, whether he was in her care or whether he was in the care of another.

A resource parent who has been a support for [the] other resource parent. A resource parent who has been the most stable presen[ce] in this child's life for the majority of his life.

This home may very well be the most stable home that this child has ever experienced.

Sarah now appeals from the January 13, 2023 judgment terminating her parental rights to Ivan, only challenging Judge Marley's decision on the third

A-1706-21

and fourth best interests prongs.[3]  For the first time on appeal, Sarah claims the remand judge failed to consider KLG with Melissa as an alternative to termination of her parental rights.  She maintains termination of her parental rights will do more harm than good.

We have considered Sarah's contentions in view of the governing legal principles and conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  Judge Marley's unassailable findings are supported by substantial credible evidence and are entitled to our deference.  N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014).  Accordingly, we affirm substantially for the reasons stated by Judge Marley in her cogent oral opinion that accompanied the January 13, 2023 judgment.  We simply add because Sarah never proposed KLG with Melissa, there was no need for the judge to consider the issue.  Nonetheless, in her oral decision, Judge Marley expressly noted Melissa clearly understood the differences between KLG and adoption and "wanted adoption only" because "the child needs a secure and permanent placement and home."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Sarah's two other children are in the custody of their respective fathers and are not parties to this appeal.

A-1706-21